TIMOTHY S. LAFFREDI (WI SBN 1055133)
Assistant United States Trustee
ELVINA ROFAEL (SBN 333919)
Trial Attorney
United States Department of Justice
Office of the United States Trustee
450 Golden Gate Avenue, 5th Floor, Suite #05-0153
San Francisco, CA 94102
Telephone: (415) 252-2080
Facsimile: (415) 705-3379
Email: Elvina.Rofael@usdoj.gov

Attorneys for TRACY HOPE DAVIS
United States Trustee for Region 17

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**BIJOU-CENTURY, LLC,**<br><br>Debtor. | No. 22-30126-HLB<br><br>Chapter 11<br><br>Date: March 16, 2022<br>Time: 2:00 p.m.<br>Place: Tele/Videoconference<br><br>Judge: Honorable Hannah L. Blumenstiel |

**UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO**
**<u>DEBTOR'S FIRST DAY MOTIONS [ECF NOS. 5, 6, 7, & 8]</u>**

Tracy Hope Davis, the United States Trustee for Region 17 (the "U.S. Trustee"), hereby files this omnibus objection (the "Omnibus Objection") to the first day motions filed by Bijou-Century, LLC (the "Debtor").

These first day motions are referred to collectively hereafter as the "First Day Motions," or individually as set forth below:

- *Motion to Honor Employee Obligations* (the "Wages Motion") [ECF No. 5];
- *Motion to Retain Bank Account* (the "Cash Management Motion") [ECF No. 6];
- *Motion re: Short-Term Cash Borrowing* (the "Short-Term Cash Borrowing Motion") [ECF No. 7]; and
- *Motion re Backstop Borrowing* (the "Backstop Borrowing Motion") [ECF No. 8].

The U.S. Trustee reserves all rights to object to any final relief sought by the Debtor in these First Day Motions.

This Omnibus Objection is supported by the following memorandum of points and authorities and any argument the Court may permit on the Omnibus Objection.[1]

## I. MEMORANDUM OF POINTS AND AUTHORITIES

### A. Introduction

The Debtor's request for relief in the First Day Motions should either be (a) denied or (b) limited to only emergency relief to permit the Debtor to sustain business operations. The U.S. Trustee has not yet conducted the Initial Debtor Interview, Schedules have not yet been filed, and a meeting of creditors pursuant to 11 U.S.C. § 341 has not been held. Accordingly, it is the U.S. Trustee's position that this Omnibus Objection should be sustained or the hearing should be adjourned to a later date to allow the Subchapter V Trustee, creditors, and other parties-in-interest, a more meaningful opportunity to evaluate the First Day Motions.

---

[1] The U.S. Trustee requests that the Court take judicial notice of the pleadings and documents filed in these cases pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201. To the extent that the Omnibus Objection contains factual assertions predicated upon statements made by the Debtor, any of its current or former affiliates, agents, attorneys, professionals, officers, directors or employees, the U.S. Trustee submits that such factual assertions are supported by admissible evidence in the form of admissions of a party opponent under Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 801(d)(2).



Case: 22-30126 Doc# 25 Filed: 03/16/22 Entered: 03/16/22 09:49:44 Page 2 of 10

## B. <u>Background Facts and Procedural Posture</u>

1. On March 13, 2022 (the "Petition Date"), the Debtor commenced its voluntary case under Subchapter V of Chapter 11 of the Bankruptcy Code. *See* ECF No. 1. The Petition was signed by Joseph Carouba, as the Debtor's Managing Manager. *Id*. Mr. Carouba and Gary Marlin were designated the Responsible Individuals for the Debtor.[2] ECF No. 22.

2. On March 14, 2022, the U.S. Trustee appointed Mark Sharf to serve as Subchapter V Trustee for this case. ECF No. 15.

3. The U.S. Trustee has not yet conducted the Initial Debtor Interview. The meeting of creditors in this case has been scheduled for April 12, 2022 at 9:00 a.m. *See* Bankruptcy Docket, *generally*.

4. On the Petition Date, the Debtor filed its list of twenty largest unsecured creditors. *See* ECF No. 1. To date, the Debtor has not filed the required Schedules and Statements, including Schedule A/B, Schedule D, Schedule E/F, and the Statement of Financial Affairs. *See* Bankruptcy Docket, *generally*.

5. The Debtor filed the First Day Motions on Sunday, March 13, 2022. *Id*. On March 14, 2022, the Bankruptcy Court entered an order setting the hearing on the First Day Motions for March 16, 2022 at 2:00 p.m. with objections due in writing no later than 10:00 a.m. on March 16, 2022. *See* ECF No. 16.

6. According to the first day declaration of Mr. Carouba (ECF No. 14) (the "Carouba Declaration"), the Debtor "operates a 'gentleman's club' known as 'The New Century Theatre' located in the Tenderloin neighborhood of San Francisco. Although [the Debtor] is beginning to recover from the effects of the Pandemic, it is entirely unable to support its current expenses of litigation, its past litigation settlements and its potential prospective litigation exposure." *See* Carouba Declaration, at ¶ 2.

---

[2] According to the Declaration of Michael St. James, proposed counsel for the Debtor, in support of the application for order designating responsible individuals, the Debtor is managed by SFBSC, and Mr. Marlin "is the employee of SFBSC principally responsible for the management of the [Debtor]." ECF No. 19.

7. The Debtor is managed through the SFBSC Management Company and Mr. Carouba is identified in the Debtor's Articles of Organization as the Debtor's "Manager." *See* Carouba Declaration, at ¶ 3 and ECF No. 19.

8. In connection with the Wages Motion, the Debtor seeks Court authorization to pay its pre-petition employee-related obligations, with payment to each individual employee not to exceed an aggregate of $13,650. *See* ECF No. 5, at p. 12. The Carouba Declaration includes a list of the pre-petition payroll claims with the employees identities redacted.[3] *See* Carouba Declaration, at p. 18.

9. In connection with the Cash Management Motion, the Debtor seeks "authorization to retain and keep open its pre-petition bank account, so as to continue to timely collect credit card and ATM remittances." *See* ECF No. 6, at p. 2. However, the Debtor asserts it will "explore the feasibility of opening a [Debtor-in-Possession] account and redirecting remittances to that account." *Id*.

10. Furthermore, in connection with the Short-Term Cash Borrowing Motion and Backstop Borrowing Motion, the Debtor seeks court authorization:

a. to borrow cash from its affiliate, The Gold Club, to meet short-term needs to be repaid in full within two business days (*See* ECF No. 7, at p. 1), and

b. to borrow up to $30,000 on an interim basis from its affiliate, Déjà Vu San Francisco, LLC, da Centerfolds ("Déjà Vu"), as a "backstop" credit facility to ensure that immediate operational expenses can always be timely funded on a current basis. *See* ECF No. 8, at p. 7.

11. Debtor further indicates that the lenders will be afforded administrative super-priority status. *See* ECF No. 9, at pp. 2-3

12. The U.S. Trustee has communicated with the Subchapter V Trustee regarding some of the issues outlined below in anticipation of the March 16, 2022 hearing and understands that Trustee Sharf intends to file his own objection to the First Day Motions.

---

[3] On March 14, 2022, Mr. St. James provided the U.S. Trustee with an unredacted list of the pre-petition payroll claims.

## II. ARGUMENT

Four principles for Courts to consider with regard to first day motions are:

> First, the requested relief should be limited to that which is minimally necessary to maintain the existence of the debtor, until such time as the debtor can affect appropriate notice to creditors and parties in interest. In particular, a first day order should avoid substantive rulings that irrevocably determine the rights of parties.
>
> Second, first day orders must maintain a level of clarity and simplicity sufficient to allow reasonable confidence that an order will effect no unanticipated or untoward consequences.
>
> Third, first day orders are not a device to change the procedural and substantive rights that the Bankruptcy Code and Rules have established. In particular, first day orders should provide no substitute for the procedural and substantive protections of the plan confirmation process.
>
> Fourth, no first day order should violate or disregard the substantive rights of parties, in ways not expressly authorized by the Bankruptcy Code.

*See In re The Colad Group, Inc.*, 324 B.R. 208, 213-14 (Bankr. W.D.N.Y. 2005).

13. Accordingly, the relief sought in all of the First Day Motions, if granted at all, should only be granted on an interim basis, with a final hearing set so that the Subchapter V Trustee, and parties-in-interest can review and respond to the final relief sought, preferably after a meeting of creditors is held.

### A. The Wages Motion

14. As set forth in the Wages Motion, the Debtor employs approximately twenty-eight persons. *See* ECF No. 5, at p. 3. The Debtor seeks authority to honor all employee obligations with no distribution exceeding the $13,650 priority cap. *Id*. at p. 2.

15. The U.S. Trustee takes no position on the payment of (i) pre-petition claims of the Debtor's non-insider employees that are entitled to priority under Sections 507(a)(4) and 507(a)(5),



Case: 22-30126 Doc# 25 Filed: 03/16/22 Entered: 03/16/22 09:49:44 Page 5 of 10

or (ii) the related payroll taxes, deductions and withholdings, provided these amounts do not exceed the statutory cap.

16. However, the U.S. Trustee opposes payments to any of the Debtor's insiders. To the extent that the motion does seek authorization to pay insiders, the Debtor has not demonstrated that such payments are consistent with 11 U.S.C. §§ 503(c)(1) or (3), or that the immediate payment to insiders is necessary to avoid immediate and irreparable harm to the Debtor. *See* Fed. R. Bankr. P. 6003(b); *see also In re Humboldt Creamery*, LLC, 2009 WL 2820552, at *1 (Bankr. N.D. Cal. Apr. 23, 2009) ("The request is governed by Rule 6003(b) of the Federal Rules of Bankruptcy Procedure. This rule does not permit the payment of a claim which arose prepetition for the first 20 days of a bankruptcy unless it is necessary to avoid immediate and irreparable harm.").

17. Thus, before the motion is granted, the Debtor should file an unredacted list of employees (along with their titles) the Debtor is proposing to pay, along with the proposed payments. *Cf. In re Motors Liquidation Co*., 561 B.R. 36, 38 n.1 (Bankr. S.D.N.Y. 2016) ("[P]rivate parties rarely if ever object to another party's sealing motion. The Court and the United States Trustee have generally been vigilant in protecting the public interest in public access to court records.").

**B. <u>The Cash Management Motion Should be Denied or Granted Only on a Limited Basis.</u>**

18. In the Cash Management Motion, the Debtor seeks "authorization to retain and keep open its pre-petition bank account, so as to continue to timely collect credit card and ATM remittances." *See* ECF No. 6, at p. 2. The Debtor asserts it will "explore the feasibility of opening a [Debtor-in-Possession] account and redirecting remittances to that account." *Id*.

19. Bankruptcy Code Section 345(b) protects creditors against the loss of estate funds deposited or invested by debtors. *See In re CWNevada LLC*, 602 B.R. 717, 744 (Bankr. D. Nev.

2019) ("Those requirements are designed to ensure the safety of the funds held by a trustee or debtor in possession as a fiduciary of a bankruptcy estate.").

20. Specifically, Section 345(b) provides that money of the estate shall be insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States. Money of the estate may also be deposited in an entity that has posted a bond in favor of the United States or has deposited securities with the Federal Reserve Bank. A court may waive the requirements of Section 345 upon a showing of "cause." *See* 11 U.S.C. § 345(b).

21. In order to ensure compliance with Section 345(b), the U.S. Trustee has implemented guidelines for debtors in possession regarding bank accounts (the "Guidelines"). Among other things, the Guidelines require debtors in possession to close their pre-petition bank accounts and open new bank accounts at an authorized depositary. *See United States Trustee Chapter 11 Operating and Reporting Guidelines for Debtors in Possession* (Region 17), available at https://www.justice.gov/ust-regions-r17/file/guidelines.pdf/download.[4]

22. Authorized depositories have agreed to maintain collateral, unless an order of the bankruptcy court provides otherwise, in an amount of no less than 115 percent of the aggregate bankruptcy funds on deposit in each bankruptcy estate that exceeds the FDIC insurance limit. *See* United States Trustee Program Policy and Practices Manual, Volume 7, "Banking and Bonding," (the "U.S. Trustee Manual"), §§ 7-1.1 and 7-1.2.1, pp. 1-2.[5] Authorized depositories have also

---

[4] The U.S. Trustee is mindful that some courts have concluded that guidelines established by the U.S. Trustee do not have the force and effect of law. *See, e.g., In re Young*, 205 B.R. 894, 897 (Bankr. W.D. Tenn. 1997); *In re Lani Bird, Inc.*, 113 B.R. 672, 673 (Bankr. D. Hawaii 1990); *In re Gold Standard Baking, Inc.*, 179 B.R. 98, 105-06 (Bankr. N.D. Ill. 1995); *In re Johnson*, 106 B.R. 623, 624-25 (Bankr. D. Neb. 1989). As a result, "if the court is to require debtors to comply with particular provisions of the U.S.T.'s Guidelines, it must be for a reason independent of the Guidelines themselves." *Johnson*, 106 B.R. at 624.

[5] The Manual is available for download at https://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual.

agreed to make periodic reports so that the U.S. Trustee can monitor compliance. *See* U.S. Trustee Manual, § 7-1.3.2, p. 5.

23. Here, according to the Cash Management Motion, the Debtor maintains one bank account at Bank of America. *See* ECF No. 6, at p. 1. Bank of America is an authorized depository in the Northern District of California. *See* *https://www.justice.gov/ust-regions-r17/file/Authorized_Depository_NCA.pdf/download*.

24. In addition, the Debtor represents that the pre-petition bank account "will be used for the sole purpose of receiving credit card revenues, with those revenues periodically swept to a DIP operating account." *See* ECF No. 6, at p. 8.

25. At the outset, it should be noted that the U.S. Trustee is available to confer with the Debtor regarding compliance with Section 345 with respect to the pre-petition bank account at issue.

26. The U.S. Trustee objects to the Cash Management Motion, however, because the Debtor has failed to meet its burden of showing that a waiver of Section 345(b) is appropriate or necessary. In particular, although the Debtor indicates it will "periodically" sweep funds into its DIP Account, the Debtor does not define how often this will occur.

27. In contrast, by virtue of the collateralization and reporting requirements imposed on authorized depositories, compliance with the Guidelines will ensure compliance with the requirements of 11 U.S.C. § 345(b).

28. To the extent the Court is inclined to approve the Cash Management Motion, the Order should require the Debtor to take all reasonable steps to have to have its account at Bank of America designated as a "Debtor-in-Possession" account by the institution.

**C. The Short-Term Borrowing Motion and Backstop Borrowing Motion**

29. The U.S. Trustee identified the same concerns for the Short-Term Borrowing and Backstop Borrowing Motions, addressed together in this subsection.

30. In the Short-Term Borrowing Motion, the Debtor seeks authority to borrow cash from The Gold Club to meet short-term needs to be repaid in full within two business days. *See* ECF No. 7, at pp. 1 and 6. Furthermore, in the Backstop Borrowing Motion, the Debtor seeks authority to borrow up to $30,000 from Déjà Vu as an assurance that "even in unexpected adversity, the business can continue to meet its obligations." *See* ECF No. 8, at pp. 1 and 8.

31. Here, the Declaration of Mr. St. James indicates that the Short-Term Cash Borrowing Motion and the Backstop Borrowing Motion propose to provide The Gold Club and Déjà Vu, respectively, an administrative super-priority with respect to repayment of any amounts owed. *See* ECF No. 9, at pp. 2-3.

32. Before approving a post-petition credit on a super-priority basis, the Debtor bears the burden of showing that it was unable to obtain financing other than on a super-priority or priming basis. *See In re Tamarack Resort, LLC*, 2010 WL 4117459, at *9 (Bankr. D. Idaho Oct. 19, 2010).

33. Furthermore, courts routinely consider the following factors: (i) whether the proposed facility is an exercise of the debtor's reasonable business judgment; (ii) whether the proposed facility is in the best interests of both the estate and its creditors; (iii) whether the transaction is both (a) necessary to preserve estate assets and (b) necessary and essential for the continued operation of the debtor's business; (iv) whether the terms of the proposed transaction are fair and reasonable given the circumstances; and (v) whether the proposed facility was negotiated in good faith and at arm's length. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003).

34. Both the Short-Term Borrowing and Backstop Borrowing Motions provide no evidence that the proposed transactions are needed. The Debtor has yet to file Schedules or disclose the amount of funds it currently maintains. With respect to the Backstop Borrowing Motion, the Debtor admits that it "does not presently anticipate any need to access the Backstop Borrowing." *See* ECF No. 8, at p. 7. Furthermore, based on the fact that the Debtor acknowledges that the

lenders are affiliates of the Debtor, and no loan documents exist for either credit facility, a concern remains that the proposed creditor facilities were not negotiated at arm's length.

35. Based on the foregoing, the Short-Term Borrowing and Backstop Borrowing Motions should be denied.

**D. Reservation of Rights**

The U.S. Trustee reserves all her rights with respect to the First Day Motions to object to any supplements filed or further arguments raised.

## III. CONCLUSION

In view of the shortened notice provided to the Subchapter V Trustee, creditors, and other parties-in-interest, along with the Debtor's failure to establish a sufficient evidentiary record for the relief sought, the objected to First Day Motions should either be denied in their entirety, denied in part as set forth herein, or any relief granted should be limited for the Debtor to sustain operations and to provide adequate protection, if any. Alternatively, the First Day Motions should be adjourned until a later date. The U.S. Trustee has been in communication with the Subchapter V Trustee; however adjournment would permit the Subchapter V Trustee and parties that were not provided sufficient notice to review and be heard on the First Day Motions.

Dated: March 16, 2022

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By: /s/ Elvina Rofael
Elvina Rofael
Attorney for the United States Trustee