Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
22 Battery Street, Suite 810
San Francisco, California 94111
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Counsel for the Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

In re

BIJOU-CENTURY, LLC,

Debtor

Case No. 22-30126

Chapter 11

DATE: July 14, 2022
TIME: 1:00 p.m.
JUDGE: Honorable Hannah L. Blumenstiel

### OPPOSITION TO MOTION FOR RELIEF FROM STAY

I. INTRODUCTION

The Motion suggests that nothing burdensome or problematic is sought, merely an effort by a creditor to access an insurance policy. In fact, there is serious doubt about whether the claims at issue *are* insured, and a grant of relief from stay to enable Doe to attempt to articulate and prove an insured claim would be terribly disruptive at a time when all of the Debtor's efforts should be focused on its reorganization. It is likely that a grant of relief from stay would result in very material post-petition efforts – and post-petition revenues – being dedicated to addressing one pre-petition creditor's efforts to achieve a recovery superior to that enjoyed by all other similarly situated creditors.

The correct legal test is well-established but was ignored by Doe. Applying that test, the Court should deny relief from stay.

## II. RELEVANT FACTS

### A. The Doe Litigation

The Complaint alleges that Doe went to the New Century Theater for an audition, at which the on-site manager, Ken Johnson, sexually assaulted her. There is no allegation of any other connection between the Debtor, the New Century Theater or Mr. Johnson. Assuming that Doe prevailed and obtained a judgment against Mr. Johnson, she likely assumes he would be unable meaningfully to respond to it. Thus, the Debtor and subsequently its insurance policy has been the focus of the lawsuit.

No Commercial General Liability ("CGL") policy insures against intentional torts, which is the primary focus of the Complaint. It is alleged, for example, that the Debtor intended the harm that allegedly befell Doe. Complaint, ¶¶ 24, 60, 65, 72, 77, 80, 93, 95, 102. If proven, any resulting damages would clearly be uninsured under any CGL policy. Attached to the accompanying Aker Declaration is a copy of the Complaint, yellow-marked to identify the claims and assertions which, if successful, would preclude insurance coverage. They appear to be the bulk of the claims in the Complaint.

The alternative construction which might result in an insurable claim is that the Debtor "should have known" of Mr. Johnson's alleged propensity to engage in the action complained of. No factual support for such a contention is alleged in the Complaint, and at this early stage in the litigation, no discovery has addressed that issue. If relief from stay is granted, Doe will presumably seek to depose all of the members of the Debtor's management and SFBSC's management, and all of the performers and other employees at the New Century (and perhaps other Clubs) seeking to uncover evidence of Mr.

Johnson's past misconduct (if any exists) and of the extent to which the Debtor's management should have been aware of it.

There can likely be no more intrusive and disruptive engagement with the litigation process for the Debtor. Performers will be subpoenaed to be deposed, employees must dedicate hours to preparing for and participating in depositions, managers must allocate time and resources to preparing for and participating in depositions and to compiling and producing internal records, and ultimately everyone must "take a break" for a jury trial of at least two weeks.

Doe commenced the litigation in September 2020. In October 2021, the Court set a trial date of November 14, 2022. However, with the filing of the Bijou-Century bankruptcy petition in March 2022 and resulting stay of the litigation, it is virtually certain that the trial date will be vacated and a new trial date set if relief from stay is granted. Based upon the delay in initial trial date setting, the Debtor expects that trial will not be set until late 2023. Doe has estimated the length of trial at 10 court days, but with the number of witnesses likely to be involved, including experts, the Debtor expects that trial will be substantially longer.

To date, the parties to the Doe litigation have conducted no discovery, apart from an initial exchange of form and special interrogatories and document production requests. No depositions have been taken. No experts have been disclosed. No independent medical or psychiatric examinations have been noticed or conducted. No follow-up written discovery has been taken.

While the CGL insurer has thus far provided a defense, it has also issued a reservation of rights letter. The bulk of the claims asserted in the Complaint would not be covered by CGL insurance. If the insurer determines in the course of discovery that a fact has been established which would warrant a denial of coverage, it can deny coverage and refuse to provide any further defense. Then what? Doe does not suggest that relief from stay would then lapse.

What if the case goes to trial, and the findings are such that Doe has a viable claim which is not the subject of insurance coverage. Then what?

The CGL coverage for this policy period has an aggregate maximum, and a second claim arising during that policy period has been presented. If Doe collects the insurance coverage, what happens with the other plaintiff?

All of this is not to say that there is no set of facts, if proven, that would result in an insurance recovery. But it is the case that Doe's quest to prove an insurable set of facts will prove tremendously burdensome and disruptive to the Debtor's business operations and will expose it to risks and expenses which the automatic stay was intended to protect it against.

### B. The Debtor's Business Operations

As noted from the outset, the Debtor commenced this case seeking relief from litigation and the Pandemic. The results respecting the former are challenged by the instant Motion, the results regarding the latter are, to date, mixed.

Although it is a commonplace that the Pandemic is "receding" and San Francisco is "re-opening," the Debtor's experience is that both are somewhat aspirational. A cornerstone of the Debtor's business is conventions, but thus far there have been only two good conventions in almost four post-petition months. There have been profitable and unprofitable post-petition months, but the net result is that the Debtor's bank balance has gone from $45,051.84 when the petition was filed; Dkt #86; to a net of $65,231.96 on June 30, 2022 (setting aside the $200,000 ERTC payment received during that interval).

It remains reasonable to expect that there will be a recovery from the Pandemic, and that the Debtor will return to its pre-Pandemic levels of profitability. It cannot be denied, however, that the recovery has not yet arrived for the Debtor, and that operations are presently touch and go. The Sub V

Trustee monitors cash carefully and has made it clear that he will seek relief if the Debtor's ability to tread water becomes doubtful.

In this context, the disruption associated with permitting the Doe litigation to go forward could prove fatal. The impact on the Debtor's ability to operate if its performers and managers are subpoenaed to depositions cannot be minimized. This is, in fact, precisely the burden and disruption which the "breathing spell" afforded by the automatic stay was intended to protect against.

### III. THE LEGAL STANDARD

The legal standard to be applied is well established:

A party may move for relief from automatic stay under 11 U.S.C. § 362, which provides that a bankruptcy court shall grant relief from the stay upon a showing of cause. 11 U.S.C. §362(d)(1). Cause is determined on a case-by-case basis. *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citation omitted). In determining whether cause exists to permit an action to proceed in a nonbankruptcy forum, courts often analyze the twelve factors set forth in *In re Curtis,* 40 B.R. 795 (Bankr. D. Utah 1984). These factors, known as the *Curtis* factors, are:

1. Whether the relief will result in a partial or complete resolution of the issues;

2. The lack of any connection with or interference with the bankruptcy case;

3. Whether the foreign proceeding involves the debtor as a fiduciary;

4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditor's committee and other interested parties;

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination;

9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

12. The impact of the stay and the balance of hurt.

*Curtis*, 40 B.R. at 799–800 (internal citations omitted); *see also In re Roger,* 539 B.R. 837, 844-45 (C.D. Cal. 2015); *In re Howrey,* 492 B.R. 19, 24 (Bankr. N.D. Cal. 2013); *Truebro, Inc. v. Plumberex Specialties Products, Inc. (In re Plumberex Specialties Products, Inc.)*, 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004). The Ninth Circuit Bankruptcy Appellate Panel has recognized that "the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum." *In re Kronemyer*, 405 B.R. 915, 921 (9th Cir. BAP 2009). While the *Curtis* factors are widely used to determine the existence of cause, not all of the factors are relevant in every case, nor is a court required to give each factor equal weight. *Plumberex*, 311 B.R. at 560.

## IV. RELEVANT *CURTIS* FACTORS

The primary *Curtis* factors weigh the impact that permitting litigation to resume in a non-bankruptcy forum will have on the administration of the bankruptcy estate. Those factors are critical, and all weigh heavily against granting relief from stay in this case.

### A. Curtis Factor 2. The lack of any connection with or interference with the bankruptcy case

The most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate. *Even slight interference* with the administration *may be enough to preclude relief* in the absence of a commensurate benefit.

*In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984) (emphasis supplied)

Some litigation can have a material impact on the course of a bankruptcy case; avoidable transfer litigation, for example. That is certainly not the case here: this is simply claims liquidation litigation, which can be handled quickly, cheaply and efficiently in the bankruptcy claims process, and which will have no beneficial impact on the course of the bankruptcy case however it is resolved.

On the other hand, the State Court litigation, if allowed to proceed, will very materially interfere with the bankruptcy case. It will require the dedication of very substantial effort on the part of management and employees. Even more significantly, if performers learn that they face the prospect of depositions, they may well choose to perform at different clubs which do not impose such "fringe detriments," thereby severely impairing the Debtor's business operations.

As a result of the interference with the Debtor's bankruptcy case and the severe adverse impact that permitting the litigation to proceed will likely have on the Debtor's business operations results in this *Curtis* factor militates against relief from stay.

**B.   Curtis Factor 5.   Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation**

**Curtis Factor 6.   Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;**

These two *Curtis* factors also militate strongly against granting relief from stay. Doe presents the question as though the Debtor is a mere conduit for the insurance proceeds, but that is far from the case.

First, the insurer has emphatically *not* "assumed full financial responsibility:" it has issued a reservation of rights letter, and unless Doe very carefully and successfully "threads the needle," any victory she enjoys will result in a judgment for which there is no insurance coverage. This litigation is first and foremost against the Debtor, and the Debtor will be left holding the bag if the insurer concludes the claim is not covered, if there is a claim in excess of insurance coverage, if Mr. Johnson successfully demands a defense or indemnity, etc. This litigation seeks to liquidate *the Debtor's* liability, and so these *Curtis* factors militate against relief from stay.

### D. Curtis Factor 7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee, and other interested parties

The interests of other creditors weigh strongly against granting relief from stay.

Under Subchapter V, a key metric affecting creditor recovery is projected profitability over the next several years. For the reasons noted above, a grant of relief from stay at this time will certainly impair near term profitability and may call into question the Debtor's viability. At its core, the Motion asks creditors generally to sacrifice, so that Doe may take a run for the brass ring. That approach is inimical to the principles of the bankruptcy process, which seeks the greatest collective good.

### E. Curtis Factor 10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties

This *Curtis* factor militates strongly against relief from stay.

Absent relief from stay, the Doe claim will be liquidated in the bankruptcy claims liquidation process, which can be expected to yield a result quickly, efficiently and cost-effectively. If relief from stay is granted, the litigation, which is currently in its infancy, will grind on through potentially years of discovery, potentially including the depositions of virtually everyone associated with the Debtor's operations, through a jury trial which will run for at least two weeks and likely longer and will not occur until late 2023 at the earliest. A grant of relief from stay cannot be characterized as resulting in either an "expeditious" or and "economical" determination of the litigation.

### F. Curtis Factor 11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial

The State Court proceedings are in their infancy. To date, only one set of written discovery has been exchanged and substantially all discovery is yet to come. Trial will likely not occur until late 2023, at least 12 to 18 months in the future. This factor militates strongly against granting relief from stay.

### G. Curtis Factor: 12. The Impact of the Stay and the Balance of Hurt.

One anticipates that Doe would argue the severity and significance of her claims and urge that the nature of the claims warrants a balance in her favor notwithstanding the burden on the Debtor of a grant of relief from stay. It is respectfully submitted that this would misapprehend the test. The test should be considered in terms of bankruptcy policy.

A core principle of bankruptcy law is equality of treatment. With the exception of limited and specified statutory priorities, all claims share ratably, and bankruptcy courts are not asked to weigh whether creditor claims for grievous injuries, a loss of retirement savings or an unpaid utility bill have different ultimate values and should therefore enjoy different recoveries. The maxim that "equality is equity" is a bedrock principle of bankruptcy law.

Here, Doe seeks a better recovery than the bankruptcy process will give creditors generally and asks that the Debtor – and so necessarily other general unsecured creditors – make sacrifices to enable her to attempt to achieve that superior recovery. The Debtor believes the sacrifice, which will impose severe disruption on an already fragile business, will prove very substantial. Even if the sacrifice is not as extreme as the Debtor believes it will be, however, it is a sacrifice of post-petition operations and potential operating successes – which would otherwise be enjoyed by all creditors ratably – so as to enhance the recovery of a single creditor. The Debtor submits that as a matter of core bankruptcy law, such a balancing would be wrong. This *Curtis* factor also militates against relief from stay.

### V. CONCLUSION

Through a grant of relief from stay, Doe asks that the Debtor and hence its creditors generally sacrifice, so that she may attempt to increase her recovery. As a matter of bankruptcy law and policy, that sacrifice, and hence a granting of relief from stay, is wrong.

The established law looks to the 12 *Curtis* factors, acknowledging that only some will likely be relevant in any given case, that they all should not be given equal weight, and that no single factor, nor even a plurality of factors, is dispositive: the *Curtis* factors are simply a way to consider and evaluate whether relief from stay should be granted.

Here, the Debtor believes that seven *Curtis* factors are relevant, and all militate against the granting of relief from stay. The Debtor submits that the Court should find the *Curtis* analysis persuasive and be guided by it to deny relief from stay.

Respectfully submitted,

DATED: July 8, 2022    ST. JAMES LAW, P.C.


By: /s/ *Michael St James* .
　　　Michael St. James
　　　Counsel for the Debtor-in-Possession