Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
236 West Portal Avenue, Suite 305
San Francisco, California 94127
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Counsel for the Debtor

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

San Francisco Division

| | |
|---|---|
| In re<br><br>BIJOU-CENTURY, LLC<br><br>Debtor | Case No. 22-30126 HLB<br><br>Chapter 11<br><br>DATE: October 9, 2025<br>TIME: 10:00 a.m.<br>JUDGE: Honorable Hannah L. Blumenstiel |

## DECLARATION OF GARY MARLIN IN SUPPORT OF MOTION TO CONCLUDE CASE

I, Gary Marlin, do hereby declare:

1. I am an individual, over the age of 18. Since approximately 2004, I have served as the President of SFBSC Management, LLC.

2. SFBSC, LLC is a management consulting firm for nightclubs. Since approximately 2004, SFBSC has provided consulting and administrative services to Bijou-Century, LLC (the "Debtor"). These services include marketing and advertising, human resources support, payroll coordination, and contract review and administration.

3. I make this Declaration of my own personal knowledge, and if called as a witness, I could and would testify as follows:

4. During the time SFBSC, LLC has provided consulting and administrative services to the Debtor, we have taken steps to ensure that it maintained accurate books and records, including with respect to personnel and payroll matters. It was and is Debtor's policy that all such information contained in those records be made on a substantially contemporaneous basis, either by a person with direct knowledge of the events or transmitted to recordkeepers by a person with direct knowledge. For example, the Debtor's bookkeepers both maintain the Debtor's books and records and administer the Debtor's payroll and its tax filings. The Debtor maintained its records in the ordinary course of business and making and retaining such records was a regular practice of the Debtor.

5. As part of its services to the Debtor, SFBSC, LLC has acted as a custodian of the Debtor's books and records and I have consulted with those books and records to refresh and supplement my recollection of the matters set forth in this Declaration.

6. Bijou-Century is among a group of local gentlemen's Clubs (the "SF Clubs") who are specifically licensed and zoned to present lawful nude and semi-nude dance performances ("Dances"), and the fees customers pay for such Dances constitute a significant source of revenues.

7. As of the commencement of its Chapter 11 case, Bijou-Century was the subject of several pending lawsuits and was entirely unable to support its litigation expenses, its past litigation settlements and its potential prospective litigation exposure.

8. As noted throughout the case, the Debtor's business was dramatically affected by the pandemic and the steep drop in the San Francisco convention business, which represents a very substantial portion of the Debtor's clientele.

9. Bijou-Century prosecuted a reorganization under Subchapter V. The Plan contemplated that the Court would establish a "Required Payment" and that operating profits for up to three years would be

dedicated to paying Plan obligations up to the Required Payment, and if Plan obligations did not receive the Required Payment within three years, the Debtor could be liquidated.

10. During October, 2022, the month preceding the confirmation hearing, there were two large conventions and the Debtor enjoyed substantially greater revenues then at any other juncture in the course of the case. A number of parties, including the Subchapter V Trustee, argued at the Confirmation Hearing that this was the "new normal" and that there should be an initial dividend to creditors promptly upon confirmation or, at least, upon receipt of the employee retention tax credit ("ERTC") expected imminently in the amount of approximately $117,000.

11. The contested confirmation hearing was set for November 20, 2022. The Court determined that Bijou-Century's liquidation value was $472,940.43 and represented the Required Payment because there was no persuasive evidence that its projected operating profits over the ensuing three years would exceed that amount. See, Section 1191(c)(2).

12. Allowed general unsecured claims aggregated less than $1.5 million, while 4 disputed unsecured claims aggregated more than $13 million. Under the Plan, a Plan Administrator was appointed to liquidate the disputed unsecured claims through negotiation or litigation. The fees and costs of the Plan Administrator were the sole post-confirmation charge to be payable as a deduction from the Required Payment.

13. Under the Plan, the Reorganized Debtor was to pay administrative and priority claims from post-confirmation operating profits as a credit against the Required Payment. As ultimately liquidated, administrative and priority claims, inclusive of the Plan Administrator's fees, aggregated $288,469.85. The balance of the Required Payment, amounting to $184,470.58, was to be paid to general unsecured creditors within 3 years of the Effective Date.

14. There were no significant conventions in the balance of 2022, and instead the Debtor's business suffered its ordinary seasonal holiday slump. The business suffered negative cash flow in November and December. As a result of the cash losses, the Debtor's operating liquidity was impaired and there were no "excess" funds with which to pay allowed administrative expenses. With one exception, administrative

claimants were prepared to defer payment until funds were available without jeopardizing operations: The exception was the Subchapter V Trustee, who insisted on prompt payment of his $38,000 fee award.

15. The ERTC payment was received in January of 2023, which enabled the Debtor to restore operating liquidity to the business and to pay most of the other administrative expenses. There were no excess funds with which to pay an initial dividend.

16. In San Francisco, recovery from the pandemic has been slow. There were few conventions in 2023 and 2024, and while there were more conventions in 2025 to date, they have still fallen short of pre-pandemic levels. San Francisco tourism has suffered from negative press accounts, and so stable profitability has remained elusive.

17. The Debtor's ordinary minimum cash requirement is $130,000: $30,000 in the on-site ATM and $100,000 in working capital to match uneven cash flows to the bank account. The Plan contemplated that cash in excess of $130,000 would be dedicated to Plan payments. See Plan, Article 7,

18. The Plan funding mechanism, as implemented by the Plan Administrator, was straight forward: Each month's bank statement was circulated, and the cash ending balance in excess of $130,000 was transferred to the "GUC Pot" or expended on the payment of administrative and priority claims (and the Plan Administrator's fees).

19. 2023 proved to be a very difficult year for the Debtor. Many months fell far below the $130,000 minimum liquidity level and no months exceeded it, resulting in a no contribution to the GUC pot. 2024 and 2025 have been better, generating some cash for deposit to the GUC.

20. As part of the confirmation proceedings, the Court set a Required Payment of $472,940.43. Through payments of administrative and priority claims, $288,469.85 of the Required Payment has been expended, requiring that $184,470.58 be distributed to general unsecured creditors. Schedule A hereto summarizes the Debtors books and records respecting the amounts of distributions on administrative and priority claims, presenting the calculation in the preceding sentence.

21. It was only in August of 2025 that the Debtor finally generated sufficient aggregate profits to fund the last portion of the Required Payment to the GUC Pot. The Debtor currently has $184,470.58 in the GUC Pot which can be distributed to creditors.

22. Within the past few months, the Plan Administrator effected a resolution of the last of the disputed claims. The schedule attached hereto as Schedule B presents the allowed amounts of all general unsecured claims, including the agreed amounts of the formerly disputed claims. The schedule also reflects the ratable distribution of the funds available for distribution to the individual creditors, resulting in an approximately 8.1% dividend.

23. Attached hereto as Schedule C is a schedule presenting the address of each holder of an allowed claim and the amount to be distributed to that holder (the "Proposed Distribution Schedule"). The claims asserted by Jenny Rhee and Rebecca Coll were paid in full by the Gold Club, a co-obligor, so their distributions are treated as assigned to the Gold Club.

I declare under penalty of perjury according to the laws of the United States of America that the foregoing is true and correct. Executed this 17th day of September, 2025 at San Francisco, California.

/s/ *Gary Marlin* .
Gary Marlin

## Schedule A -- Administrative and Priority Payments

| | | | | |
|---|---|---|---|---|
| Total Required Plan Payment | | | | $ 472,940.43 |
| | | Claim | | |
| St. James Law | $ 143,432.76 | | | |
| Mark Sharf Sub V Trustee | $ 38,340.00 | | | |
| Long & Levit Special Counsel | $ 35,739.00 | | | |
| 816 Larkin, LLC (lease) | $ 20,967.50 | | | |
| City and County of SF (lease) | $ 14,650.00 | | | |
| | | | | |
| CA Dept of Tax and Fee | $ 825.00 | | | |
| Franchise Tax Board | | $ 800.00 | | |
| IRS | | $ 415.59 | | |
| | | | | |
| Total Admin-Priority | $ 253,954.26 | $ 1,215.59 | | |
| | | | | |
| Plan Administrator Fees | $ 33,300.00 | | | $ 288,469.85 |
| | | | | |
| Available to GUC | | | | $ 184,470.58 |

# Schedule B -- General Unsecured Claims

| | Schedule | Claim | 8.13% | |
|---|---|---|---|---|
| Available to GUCs | | | | $ 184,470.58 |
| | Schedule | Claim | 8.13% | |
| Bank of America (PPP) | | $ 710,189.91 | | $ 57,720.51 |
| déjà vu Services | | $ 3,327.96 | | $ 270.48 |
| GIG Computers | $ 554.85 | | | $ 45.10 |
| Gold Club SF | $ 255,432.58 | | | $ 20,760.22 |
| Hannah Hernandez | | $ 15,150.00 | | $ 1,231.31 |
| IRS | | $ 205.19 | | $ 16.68 |
| Jane Doe | | $ 100,000.00 | | $ 8,127.47 |
| Jenny Rhee (pay Gold Club) | $ 56,246.10 | | | $ 4,571.39 |
| Kristine Schmid | | $ 150,000.00 | | $ 12,191.21 |
| Lapasia Colbert & Mackenzie Banks | | $ 425,000.00 | | $ 34,541.77 |
| Long & Levit | | $ 240,162.19 | | $ 19,519.12 |
| Manegold Engineering | $ 160.00 | | | $ 13.00 |
| Orkin | $ 60.48 | | | $ 4.92 |
| Pacific Mobile Lock | $ 381.40 | | | $ 31.00 |
| PG&E | | $ 2,071.46 | | $ 168.36 |
| Rebecca Coll (pay Gold Club) | $ 50,000.00 | | | $ 4,063.74 |
| Recology | $ 467.80 | | | $ 38.02 |
| SAW Entertainment | $ 5,526.23 | | | $ 449.14 |
| SFBSC Management | $ 183,300.00 | | | $ 14,897.66 |
| SFPUC Water | | $ 531.66 | | $ 43.21 |
| Shindel Rock | $ 2,261.34 | | | $ 183.79 |
| Social Security Administration | $ 3,365.10 | | | $ 273.50 |
| Sonicnet | $ 555.18 | | | $ 45.12 |
| Sysco SF | $ 503.87 | | | $ 40.95 |
| The Boon Group | $ 809.90 | | | $ 65.82 |
| Tiffany Duque | | $ 38,400.00 | | $ 3,120.95 |
| Yann Dalrymple | $ 52.58 | | | $ 4.27 |
| Yogesh Narayanan | | $ 25,000.00 | | $ 2,031.87 |
| Total Distribution | | | | $ 184,470.58 |

## SCHEDULE C

## PROPOSED DISTRIBUTION SCHEDULE

| Allowed Claim | Distribution | Claimant and Address |
|---|---|---|
| $710,189.91 | $57,720.51 | Bank of America (PPP) Bryan Cave Leighton Paisner, LLP Two N Central Ave, Ste 2100, Attn: Kyle S Hirsch Phoenix, AZ 85004-4533 |
| $3,327.96 | $270.48 | Déjà Vu Services - 8252 East Lansing Road Durand, MI 48429 |
| $554.85 | $45.10 | GIG Computers Attn: Cindy Gese 7700 Calm Waters St. Las Vegas, NV 89131 |
| $255,432.58 | $20,760.22 | Gold Club SF - PO Box 2602 Seattle, WA 98111 |
| $15,150.00 | $1,231.31 | Hannah Hernandez - 638 Springfield Cir Roseville, CA 95678-7190 |
| $205.19 | $16.68 | IRS - Central Insolvency Section PO Box 7346 Philadelphia, PA 19101-7346 |
| $100,000.00 | $8,127.47 | Jane Doe - C/O The Simon Law Group, LLP 34 Hermosa Avenue Hermosa Beach, CA 90254-5009 |
| $56,246.10 | $4,571.39 | (Jenny Rhee) Gold Club SF - PO Box 2602 Seattle, WA 98111 |
| $150,000.00 | $12,191.21 | Kristine Schmid - C/O Duckworth & Peters LLP 369 Pine Street, Suite 410 San Francisco, CA 94104-3310 |
| $425,000.00 | $34,541.77 | Lapasia Colbert & Mackenzie Banks - Bracamontes & Vlasak 1901 Harrison Street Suite 1590 Oakland, CA 94612-3501 |
| $240,162.19 | $19,519.12 | Long & Levit - 465 California St, Suite 500 San Francisco, CA 94104 |
| $160.00 | $13.00 | Manegold Engineering - 272 Church Street Pawtucket |
| $60.48 | $4.92 | Orkin - PO Box 740300 Cincinnati, OH 45274 |
| $381.40 | $31.00 | Pacific Mobile Lock - 416 Vista Mar Avenue Pacifica, CA 94044 |
| $2,071.46 | $168.36 | PG&E - PO BOX 8329 Stockton, CA 95208-0329 |
| $50,000.00 | $4,063.74 | (Rebecca Coll) Gold Club SF - PO Box 2602 Seattle, WA 98111 |
| $467.80 | $38.02 | Recology - 250 Executive Park Blvd. Ste 2100 San Francisco, CA 94134-3306 |
| $5,526.23 | $449.14 | SAW Entertainment - 250 Columbus Ave Suite 207 San Francisco, CA 94133 |
| $183,300.00 | $14,897.66 | SFBSC Management - 250 Columbus Ave Suite 207 San Francisco, CA 94133 |
| $531.66 | $43.21 | SFPUC Water - 525 Golden Gate-2nd FL San Francisco, CA 94102-3220 |
| $2,261.34 | $183.79 | Shindel Rock - 28100 Cabot Drive, STE 102 Novi, MI 48377 |
| $3,365.10 | $273.50 | Social Security Administration - Attn: Cares Act 1100 West High Rise 6401 Security BLVD Baltimore, MD 21235-0001 |
| $555.18 | $45.12 | SonicNet - 2260 Apollo Way Santa Rosa, CA 95407 |
| $503.87 | $40.95 | Sysco SF - 5900 Stewart Ave Fremont, CA 94538-3147 |
| $809.90 | $65.82 | The Boon Group - 6300 Bridgepoint Parkway Building 3, Ste 500 Austin, TX 78730 |

| | | |
|---|---|---|
| $38,400.00 | $3,120.95 | Tiffany Duque - 172 Creekview Dr. Vallejo, CA 94591-8539 |
| $52.58 | $4.27 | Yann Dalrymple - 510 Parker # 3 San Francisco, CA 94118 |
| $25,000.00 | $2,031.87 | Yogesh Narayanan - ADZ Law LLP 2000 Alameda De Las Pulgas, Suite 161 San Mateo, CA 94403-1270 |